**SO ORDERED.**

**SIGNED this 1st day of August, 2018.**



UNITED STATES BANKRUPTCY JUDGE



**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| The Coder Foundry, LLC, | ) |
| | ) Case No. 17-51376 |
| Debtor. | ) |
| | ) |

**ORDER AND OPINION DENYING MOTION FOR SANCTIONS
AGAINST CORE TECHS, INC. FOR VIOLATION OF THE AUTOMATIC STAY,
AND FOR A DETERMINATION THAT THE POST-PETITION DERIVATIVE ACTION
IS VOID AB INITIO**

THIS CASE came before the Court on July 11, 2018, in Winston Salem, North Carolina upon the Motion for Sanctions against Core Techs, Inc. for Violation of the Automatic Stay, and for a Determination that the Post-Petition Derivative Action is Void Ab Initio (the "Motion for Sanctions") [Doc. #40] filed by Advanced Fraud Solutions, LLC ("AFS") and Thomas Lawrence Reaves ("Reaves") (collectively, the "Movants"), as unsecured creditors of The Coder Foundry, LLC (the "Debtor"). Rayford K. Adams, III and Spencer Cook appeared on behalf of AFS, Mark Stafford appeared on behalf of Reaves, Clint Morse appeared on behalf of Core Techs, Inc. ("Core Techs"), Edwin Ferguson appeared as the Chapter 7 Trustee (the "Trustee"), and Robert E. Price, Jr., appeared on behalf of the United States Bankruptcy Administrator. After

1

considering the Motion for Sanctions, the Objection to the Motion for Sanctions (the "Objection") [Doc. #45], the arguments of the parties, and the record in this case, the Court has concluded that the Motion for Sanctions should be DENIED for the reasons that follow.

## BACKGROUND

The Debtor is a for profit software coding school that was formed on March 3, 2014, in Kernersville, North Carolina, by AFS and Core Techs, each of whom holds a 50% ownership interest in the Debtor. In exchange for its ownership interest in the Debtor, AFS made an initial contribution of $250,000.00 to the Debtor. AFS contends that it later loaned the Debtor another $750,000.00, consisting of $250,000.00 as additional seed capital and then another $500,000.00 to allow the Debtor to expand into the Charlotte, North Carolina and New York markets.

In addition to being a 50% owner of the Debtor, Core Techs is also a member of AFS and holds a 20% ownership interest therein. Reaves is the President and Chief Executive Officer ("CEO") of AFS and was also formerly the CEO of the Debtor from its inception until April 17, 2017.

While Reaves was the CEO of both AFS and the Debtor, he began an affair with a female employee (the "Female Employee").[1] Core Techs contends that the Female Employee was originally hired as an employee of the Debtor, but was transferred by Reaves to AFS' payroll effective January 1, 2017, though she continued to do work recruiting students for the Debtor. Upon her transfer to AFS, the Female Employee received a significant pay increase that was unique to her. It is alleged by Core Techs that as a result of the affair and favoritism, and in addition to the pay increase, Reaves allowed the Female Employee to shirk her job

---

[1] It is believed the affair began during the winter of 2016-2017.

responsibilities, resulting in significant harm to the Debtor's business and to the morale of the other employees.

Ultimately, the affair was discovered and an AFS HR representative conducted an internal investigation of the affair, which included speaking with other employees about their observations. After the completion of the investigation, the AFS Board had a meeting with Reaves on April 4, 2017. Subsequently, the AFS Board issued a letter of reprimand to Reaves on April 17, 2017, for his breach of fiduciary duties owed to AFS. The letter of reprimand terminated Reaves' position as the CEO of the Debtor, but it allowed him to retain his title of President and CEO of AFS.

Later in 2017, three AFS employees who participated in the HR investigation felt that they were targets of retaliation by Reaves due to their participation. Those employees filed retaliation and hostile work environment claims with the EEOC against AFS.[2]

The Debtor's financial situation deteriorated, leading the Debtor to file for Chapter 7 bankruptcy on December 22, 2017. The certificate of resolution authorizing the bankruptcy filing was signed on December 22, 2017, by both Reaves, on behalf of AFS, and Bobby Davis, on behalf of Core Techs [Doc. #2]. Ed Ferguson was duly appointed the Chapter 7 Trustee.

On April 26, 2018, Core Techs filed a derivative action on behalf of AFS in the North Carolina General Court of Justice, Superior Court Division for Guilford County against Reaves and AFS[3] [Case No. 18-CVS-4853] (the "Derivative Action"). The complaint in the Derivative Action pursues two claims for relief: (1) Reaves' breach of the AFS operating agreement, and (2) Reaves' breach of statutory and fiduciary duties owed to AFS as its President and CEO. Core Techs asserts that due to those breaches, AFS suffered three categories of damages: (1) the

---

[2] Those claims are still pending.
[3] AFS was only named as a nominal defendant.

unjustified and inflated salary AFS paid to the Female Employee after she was transferred to the AFS payroll; (2) the exposure to significant EEOC liability; and (3) the loss of AFS' investment of $1,000,000.00 in the Debtor. The complaint additionally seeks punitive damages for the extreme nature of Reaves' misconduct.

Shortly after Core Techs initiated the Derivative Action, the Movants brought this Motion for Sanctions against Core Techs, alleging that the action constitutes a violation of the automatic stay. More specifically, the Motion for Sanctions alleges that the claims at issue in the Derivative Action belong to the Debtor, and as such, constitute property of the bankruptcy estate and can only be pursued by the Trustee. Thus, the Movants argue that by bringing and maintaining the Derivative Action, Core Techs is attempting "to exercise control over property of the estate in willful violation of § 362(a)(3) of the Bankruptcy Code." Motion for Sanctions 1. The Trustee has not joined in the Motion for Sanctions and has not asserted that the claims constitute property of the bankruptcy estate.

## ANALYSIS

The limited issue before the Court is whether the state court Derivative Action by Core Techs against Reaves is a violation of the automatic stay under 11 U.S.C. § 362. Pursuant to 11 U.S.C. § 362, the automatic stay takes immediate effect upon the filing of a debtor's bankruptcy petition. *Kadlecek v. Schwank USA, Inc.*, 486 B.R. 336, 339 (M.D.N.C. 2013). The automatic stay protects property of the bankruptcy estate. *Foskey v. Plus Props., LLC*, 437 B.R. 1, 9 (D.D.C. 2010) (quoting *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1471 (D.C. Cir. 1991)). Upon filing, the debtor gives up the ability to control property of the estate, and the Trustee has the sole authority to use, sell, or lease such property, or to take actions under Chapter 5 of Title

11 to recover such property. *Borlo v. Navy Fed. Credit Union*, 458 B.R. 228, 231 (D. Md. 2011) (quoting *Miller v. Pac. Shore Funding,* 287 B.R. 47, 49-50 (D.Md. 2002)).

11 U.S.C. §541 provides that the bankruptcy estate includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes potential claims and lawsuits the debtor has against third parties. *See Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 869 (4th Cir. 1991); *In re Bostic Constr., Inc.*, 435 B.R. 46, 60 (Bank. M.D.N.C. 2010). "The property of the estate thus consists of whatever rights a debtor has in property at the commencement of the case…no more, no less." *Foskey*, 437 B.R. at 9 (quoting *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984)). The rights a debtor holds in property are determined by state law. *Id.*; *Butner v. United States*, 440 U.S. 48, 54 (1979).

In this case, whether the Derivative Action violates the automatic stay depends upon whether the claims asserted therein constitute property of the bankruptcy estate. The claims asserted are (1) Reaves' breach of the AFS operating agreement, and (2) Reaves' breach of statutory and fiduciary duties owed to AFS as its President and CEO. The Court will address each claim in turn.

  *a. Breach of the AFS Operating Agreement*

Does the claim for Reaves' breach of the AFS operating agreement constitute property of the estate? The general rule pursuant to North Carolina law is that one who is not a party to a contract may not maintain an action for its breach. *Estate of Jiggetts v. City of Gastonia*, 128 N.C. App. 410, 415 (1998). There is an exception, however, to the general rule for third party beneficiaries of a contract. *Id*. In order to assert rights as a third party beneficiary under an operating agreement, a party must show that they were the intended beneficiary of the contract.

*Id*. In other words, the contract must be executed for the direct, and not the incidental benefit of that third party. *Id*.

Core Techs' first claim for relief asserts that the AFS Board appointed Reaves as its President and CEO pursuant to the AFS operating agreement and that Reaves agreed to and was bound by the terms and provisions therein. There is no evidence before the Court that the Debtor was a party to the AFS operating agreement. Further, no facts have been presented to the Court to indicate that the Debtor was a third party beneficiary of the contract. Thus, the Court concludes that the Debtor could not maintain an action for breach of the AFS operating agreement, and, as such, the claim is not property of the Debtor's bankruptcy estate.

    *b.  Breach of Statutory and Fiduciary Duties*

Does the claim for Reaves' breach of statutory and fiduciary duties owed to AFS as its President and CEO constitute property of the estate? Pursuant to N.C. Gen. Stat § 57D-3-21(b),

> [e]ach manager shall discharge that person's duties (i) in good faith, (ii) with the care an ordinary prudent person in a like position would exercise under similar circumstances, and (iii) subject to the operating agreement, in a manner the manager believes to be in the best interests of the LLC.

N.C. Gen. Stat. § 57D-3-21(b). In other words, "an LLC's managers and company officials owe fiduciary duties to the LLC to discharge their duties in good faith, with the care of an ordinary prudent person, and in the best interests of the LLC." *Timbercreek Land & Timber Co., LLC v. Robbins*, 2017 NCBC LEXIS 64, at *12 (N.C. Super. Ct. July 28, 2017) (citing N.C. Gen. Stat. § 57D-3-21(b)). These duties are owed to the LLC, not to the individual members of the LLC. *Chisum v. Campagna*, 2017 NCBC LEXIS 102, at *13 (N.C. Super. Ct. Nov. 7, 2017).

In this case, as President and CEO of AFS, Reaves owed statutory and fiduciary duties to AFS. The Debtor is not a member or manager of AFS. Therefore, the Court finds that the second

claim in the Derivative Action also does not constitute property of the Debtor's bankruptcy estate.

## CONCLUSION

As neither of the claims asserted in the Derivative Action are property of the Debtor's bankruptcy estate, the Derivative Action is not an attempt to control property of the estate. The Derivative Action represents independent claims against Reaves held solely by AFS. As such, there has been no violation of the automatic stay and sanctions are not appropriate.[4]

Now, therefore, it is ORDERED, ADJUDGED AND DECREED that there is no violation of the automatic stay and the Motion for Sanctions is DENIED.

[END OF DOCUMENT]

---

[4] As there has been no violation of the automatic stay, the Court finds no need to address whether the Movants have standing to seek sanctions.

PARTIES TO BE SERVED

The Coder Foundry, LLC
Debtor

Jennifer Lyday
Attorney for Debtor

Clint Morse
Attorney for Core Techs

Rayford K. Adams, III
Attorney for Advanced Fraud Solutions, LLC

Mark A. Stafford
Attorney for Thomas Reaves

Edwin H. Ferguson, Jr.
Trustee

William Miller
US Bankruptcy Administrator